UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW SMITH,

                              Plaintiff,

v.                                                                           9:17-cv-0244
                                                                                        (TJM/TWD)

DR. RUSSELL FRICKE,

                              Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

ANDREW SMITH
Plaintiff, *pro se*
646 Second Avenue
First Floor
Troy, NY 12182

MAYNARD, O'CONNOR LAW FIRM          KAREN BUTLER, ESQ.
Counsel for Defendant
6 Tower Place
Albany, NY 12203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

      Plaintiff Andrew Smith commenced this *pro se* action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his constitutional rights while confined at the Rensselaer County Correctional Facility ("RCCF"). (Dkt. No. 1.) The Honorable Thomas J. McAvoy, United States Senior District Judge, reviewed the complaint in accordance with 28 U.S.C. § 1915 and found only Plaintiff's claim that Dr. Russell Fricke ("Defendant" or "Dr. Fricke") was deliberately indifferent to his prostate condition survived initial review and required a response.

(Dkt. No. 4.) Defendant filed a motion for summary judgment, which was referred to this Court for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). (Dkt. No. 51.) By Report-Recommendation, dated August 7, 2019, this Court recommended that Defendant's motion be denied. (Dkt. No. 58.) Defendant objected to the Report-Recommendation. (Dkt. No. 59.) By Decision & Order, dated September 23, 2019, Defendant's objections to the Report-Recommendation were overruled in part and sustained in part. (Dkt. No. 64.) The Report-Recommendation was accepted and adopted insofar as this Court concluded Defendant's motion for summary judgment should be denied because facts exist sufficient for a jury to conclude that Dr. Fricke was deliberately indifferent to Plaintiff's serious medical need. *Id*. However, the case was also remanded to the undersigned for additional briefing and a Report-Recommendation on the issue of equitable tolling and fraudulent concealment, which the undersigned raised *sua sponte* in the Report-Recommendation. *Id*.

In accordance with the instructions set forth in the Decision & Order, the parties were directed to brief the issue of whether the doctrine of fraudulent concealment applies to any claims Plaintiff may have for his incarceration between June 8, 2012, and June 17, 2013. (Dkt. No. 65.) After carefully considering the matter and the parties' submissions, the Court answers this question in the negative, generally for the reasons stated in Defendant's memoranda of law. (Dkt. Nos. 66, 67, 71, 73.)

## II. DISCUSSION

### A. Statute of Limitations

The statute of limitations period for Section 1983 claims brought in federal court in New York is three years. *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93, 94 (2d Cir. 2009). Generally, a Section 1983 claim accrues "when the plaintiff knows or has reason to

2

know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). With respect to deliberate indifference claims, the action accrues when the plaintiff "knows or has reason to know of the injury." *Whitfield v. O'Connell*, No. 09 Civ. 1925, 2010 WL 1010060, at *5 (S.D.N.Y. Mar. 18, 2010), *aff'd*, 402 F. App'x 563 (2d Cir. 2010) (summary order).

In this case, Plaintiff filed his complaint on March 2, 2017. (Dkt. No. 1.) Accordingly, the Court finds any deliberate indifference allegations that predate March 2, 2014, *i.e.*, allegations that relate to Plaintiff's incarceration at the RCCF from June 8, 2012, through June 17, 2013, are time-barred.

### B.   Equitable Tolling Based on Fraudulent Concealment

Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint. *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011). "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id.* (quoting *Veltri v. Bldg. Serv. 32-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)). The plaintiff bears the burden of showing that he or she is entitled to equitable tolling. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).

Under the doctrine of equitable tolling, "when a defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (brackets in original); *accord Daniel v. Safir*, 175 F. Supp. 2d 474, 480 (E.D.N.Y. 2001) ("A plaintiff seeking equitable tolling of a limitations period must demonstrate that defendants engaged in a fraud which

3

precluded him from discovering the harms he suffered or the information he needed to file a complaint."). To benefit from the doctrine of equitable tolling based on fraudulent concealment, the "plaintiff must submit non-conclusory evidence of conspiracy or other fraudulent wrongdoing which precludes his *possible* discovery of harms that he suffered." *Pinaud*, 52 F.3d at 1157 (emphasis in original).

"To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including (1) wrongful concealment by defendants [of their actions] (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *Richard v. LeClaire*, No. 9:15-CV-00006 (BSK/TWD), 2017 WL 4349381, at *2 (N.D.N.Y. Sept. 29, 2017) (quoting *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013)). "The elements of fraudulent concealment must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Hodges v. Glenholme School*, 713 F. App'x 49, 51 (2d Cir. 2017) (summary order); *accord Koch v. Christie's International PLC*, 785 F. Supp. 2d 105, 116 (S.D.N.Y. 2011) ("a plaintiff attempting to apply fraudulent concealment must 'plead each of [the three elements of equitable tolling] with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.'") (quoting *National Group for Communications and Computers LTD. v. Lucent Technologies, Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006)); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (plaintiff must allege "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" (emphasis in original)).

Here, upon review of the parties' submissions and assessing the record in the light most favorable to Plaintiff, the Court finds Plaintiff has not presented the Court with a "rare and

4

exceptional circumstance" warranting the application of equitable tolling.  Furthermore, to receive the benefit of equitable tolling, a plaintiff must demonstrate that he or she pursued the action with the appropriate amount of diligence.  Such evidence is lacking here.

Moreover, Plaintiff has since clarified that his deliberate indifference claim against Dr. Fricke "has absolutely nothing to do" with his incarceration at RCCF in 2012 and 2013.  (*See, e.g.*, Dkt. No. 66 at ¶¶ 2, 7.)  Indeed, Dr. Fricke only began his employment with Corrections Medical Care in March of 2013, serving as the part-time jail physician at RCCF.  (Dkt. No. 67-1 at ¶¶ 6, 7.)  The summary judgment record indicates Plaintiff was released from RCCF on June 17, 2013.  (Dkt. No. 51-7 at ¶ 38.)  Plaintiff returned to RCCF on February 12, 2014, and was there until August 11, 2014.  *Id*. at ¶ 40.  He was released for a very short time, and returned to RCCF on August 14, 2014, where he remained until he was transferred into the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on October 17, 2014.  *Id*.  Dr. Fricke saw Plaintiff during his incarcerations at RCCF from February 12, 2014, until October 17, 2014.  (Dkt. No. 67-1 at ¶ 16.)  Plaintiff was diagnosed with prostate cancer in March of 2015, while in the custody of DOCCS.  *Id*. at ¶ 15.

Based on the foregoing, this Court finds that the doctrine of fraudulent concealment does not apply to any claims Plaintiff may have for his incarceration between June 8, 2012, and June 17, 2013.  Accordingly, it is recommended that only the question of whether Defendant engaged in deliberate indifference to a serious medical need at a time within the statute of limitations remains for trial.  In so recommending, the Court expresses no opinion on the merits of Plaintiff's deliberate indifference claim against Dr. Fricke.

As a final note, because the matter was remanded with specific instructions for briefing and a Report-Recommendation on the issue of whether fraudulent concealment applies to any

5

claims Plaintiff may have for his incarceration between June 8, 2012, and June 17, 2013, any other claims, contentions, and/or arguments raised by the parties *sua sponte* in their submissions (Dkt. Nos. 66, 67, 71, 73) are not properly before the Court and have not been considered, including the ultimate issue of whether Dr. Fricke was deliberately indifferent to Plaintiff's serious medical need.

In sum, if the foregoing is accepted and adopted by the District Court, only the question of whether Defendant engaged in deliberate indifference to a serious medical need at a time within the statute of limitations remains for trial.

**WHEREFORE**, it is hereby

**RECOMMENDED** that in accordance with Senior District Judge McAvoy's Decision & Order (Dkt. No. 64) remanding the case for briefing and a Report-Recommendation on the issue of equitable tolling and fraudulent concealment, the Court recommends the District Court find that the doctrine of fraudulent concealment does not apply to any claims Plaintiff may have for his incarceration between June 8, 2012, and June 17, 2013, and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[1]  Such objections shall be filed with the Clerk of the

---

[1] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

6

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: July 2, 2020
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2010 WL 1010060
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

John WHITFIELD, Plaintiff,
v.
Dr. David O'CONNELL, et al., Defendants.

No. 09 Civ.1925(WHP).
|
March 18, 2010.

**Attorneys and Law Firms**

Mr. John Whitfield, Woodbourne, NY, pro se.

Christina Chinwe Okereke, Esq., New York State Office of the Attorney General, New York, NY, for State Defendants.

Joseph T. Pareres, Esq., Rachel Hilary Poritz, Esq., Silverson, Pareres & Lombardi, L.L.P., New York, NY, for Bio-Reference Defendants.

*MEMORANDUM & ORDER*

WILLIAM H. PAULEY III, District Judge.

**\*1** Plaintiff *pro se* John Whitfield ("Whitfield") brings this federal civil rights action against the New York State Department of Correctional Services ("DOCS"), various named and unnamed DOCS officials and medical professionals at six New York State prisons in their individual and official capacities, Bio-Reference Laboratories s/h/a Medilabs Laboratory ("Bio-Reference"), Robert L. Rush, Ph.D. ("Dr.Rush"), and unnamed Bio-Reference technologists. Defendants Dr. N. Muthra ("Dr.Muthra"), Dr. Khee Tint Maw ("Dr.Maw"), Philip Williams ("Williams"), Brian Fischer ("Fischer"),[1] and DOCS (collectively the "State Defendants") move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Dr. Rush and Bio-Reference (collectively the "Bio-Reference Defendants") move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) and, in the alternative, they move for summary judgment. For the following reasons, the State Defendants' and the Bio-Reference Defendants' motions to dismiss the Amended Complaint are granted.

[1] Numerous other individual State Defendants named and unnamed in the Amended Complaint have not been served. Those named Defendants are: DOCS Inmate Grievance Program Director Thomas G. Eagen, Drs. David O'Connell, J, Perilli, Lester Wright, Jerome Fein, "Everett," Gerald Ginsberg, Heidi L. Fine, M.A. Halko, Andrew Shapiro, and F. Lancellotti; and Registered Nurses Philip Erickson, Michael Michener, Colleen Bennett, Margaret Coloni, Ruth Gilligan, James McMahon, Robert Magee, Cathie Turta-Yohe, Carol Kunes, Baib Koziarski, Leacy Miller, D. Rick, Mana Jones, Joyce Gutowski, Suzette Cainper, Elizabeth Hamawy, Roberta Jahn-Sissoko, and Valerie Jane Monroe.

*BACKGROUND*

For purposes of these motions, this Court accepts the following allegations of the Amended Complaint as true.[2] Whitfield has been in DOCS custody since June 1988. At that time, he entered Downstate Correctional Facility ("Downstate") and has been housed over the last twenty years in at least six DOCS facilities around New York State. (Amended Verified Complaint dated Sept. 27, 2009 ("Compl.") ¶ 59.)

[2] In his Complaint, Whitfield references grievances # SS-39628-04, # WB-14349-08 and # WB14427-08, and five laboratory reports dated June 2, 1988, September 23, 1993, March 22, 1995, August 30, 2001, and July 29, 2006. These documents, which Whitfield submitted with his opposition papers, are incorporated by reference and properly considered on a motion to dismiss. *See, e.g., Sanchez v. Velez,* No. 08 Civ 1519(NRB), 2009 WL 2252319, at \*1 & n. 1 (S.D.N.Y. July 24, 2009) (considering *pro se* plaintiff's grievances referenced in the complaint on motion to dismiss).

Whitfield has complained to DOCS medical staff about lower back, kidney, chest and lung pain for years. (Compl.¶¶ 58, 94, 101.) He asserts DOCS employees omitted many of his complaints from his Ambulatory Health Records. (Compl.¶

97.) On November 6, 2000, Whitfield received treatment for bacterial pneumonia from Williams, a physician's assistant at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶¶ 6, 74.) Whitfield alleges that although he experienced a severe allergic reaction to the prescribed antibiotic, Williams forced him to continue taking the medication and refused to prescribe another. (Compl.¶ 100.)

On October 5, 2004, Whitfield filed grievance # SS-39628-04 (the "Chest Pain Grievance") at Sing Sing with the Inmate Grievance Resolution Committee (the "IGRC") complaining that the Medical Department's treatment of his ongoing chest pain was inadequate and requesting to see an outside physician. (Compl. ¶ 54; Plaintiff's Affidavit in Support of Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment dated Aug. 4, 2009 ("Pl.Aff.") Ex. A: Inmate Grievance Complaint dated Oct. 5, 2004.) On November 3, 2004, Fischer, the Superintendent of Sing Sing, denied Whitfield's appeal from the IGRC's adverse decision. (Compl. ¶¶ 8, 78; Pl. Aff. Ex. A: Superintendent decision on appeal dated Nov. 3, 2004.) Whitfield then appealed to the Central Office Review Committee (the "CORC"), which denied his grievance on December 1, 2004. (Compl.¶ 54.)

*2 In June 2008, Whitfield was transferred from Sing Sing to Woodbourne Correctional Facility ("Woodbourne"). (Compl.¶¶ 1, 55.) On arrival, Whitfield received a series of medical examinations, including blood and urine tests. (Compl.¶ 55.) On July 28, 2008, Woodbourne medical staff informed Whitfield that he had a urinary tract infection and prescribed a seven-day antibiotic regimen. (Compl.¶ 55.) Whitfield alleges that while taking the prescribed antibiotic, his "long-standing chest and lung pain flared up substantially." (Compl. ¶ 56.) When the pain persisted after completing the antibiotic treatment, he attended sick call and asked to see a doctor. (Compl.¶ 56.)

On August 13, 2008 Whitfield received copies of his DOCS medical records that he had requested. (Compl.¶ 56.) Whitfield claims they showed that "as far back as March 1995 there was clear documentary evidence of bacteria in his urine." (Compl.¶ 56.) Specifically, a laboratory report from Attica Correctional Facility ("Attica") dated March 22, 1995 indicated a "few" bacteria in his urine (Pl. Aff. Ex. B: Laboratory report dated Mar. 22, 1995 ("Attica Lab Report")), yet according to Whitfield he did not receive antibiotics for that condition at Attica (Compl.¶ 56). Further, two laboratory reports from Sing Sing dated August 30, 2001 and July 29, 2006 recorded "moderate" bacteria in his urine and abnormal hematology results such as low white blood cell and platelet counts. (Compl. ¶ 57; Pl. Aff. Ex. B: Laboratory reports dated Aug. 30, 2001 and July 29, 2006 ("Sing Sing Lab Reports").) The Sing Sing Lab Reports were ordered by Drs. Muthra and Maw, physicians in Sing Sing's Medical Department. (Compl. ¶¶ 4-5, 73; Sing Sing Lab Reports.)

The Attica Lab Report and the Sing Sing Lab Reports were issued by Bio-Reference, an independent laboratory that performed the testing of samples sent by requesting DOCS physicians who treated Whitfield. (Compl.¶ 10.) Dr. Rush is, and was at all relevant times, the Director of Bio-Reference. (Compl.¶ 11.) Whitfield alleges that Bio-Reference did not identify the specific bacteria found in his urine or conduct antibiotic sensitivity tests after urinalyses showed the presence of bacteria on March 22, 1995, August 20, 2001, and July 29, 2006. (Compl.¶¶ 79-80.) He further claims that the Bio-Reference Defendants instituted a policy discouraging Bio-Reference employees from using costly techniques like bacteria identification and sensitivity tests on inmate samples. (Compl.¶ 81.)

On August 18, 2008, Whitfield met with Dr. F. Lancellotti ("Dr.Lancellotti"), a physician in the Woodbourne Medical Department, to inquire about his abnormal test results. (Compl.¶¶ 39, 58.) Dr. Lancellotti conducted additional blood and urine tests to confirm the antibiotic treatment removed all bacteria, as well as an x-ray and an EKG. (Compl. ¶ 58.) Whitfield alleges that despite his requests, Dr. Lancellotti refused to conduct other tests to determine whether the bacterial infection damaged any organs. (Compl.¶ 58.) Whitfield was subsequently informed that the blood and urine tests were negative for the presence of bacteria. (Compl.¶ 58.)

*3 Whitfield then ordered a copy of his entire DOCS medical file. (Compl.¶ 59.) In reviewing that file on September 8, 2008, Whitfield learned that the first urinalysis conducted when he entered DOCS custody at Downstate in June 1988 indicated the presence of bacteria in his urine. (Compl. ¶ 59; Pl. Aff. Ex. B: Laboratory report dated June 2, 1988 ("Downstate Lab Report")) He also discovered a laboratory report from Attica dated September 23, 1993 reporting a "marked decrease" in platelet count. Whitfield claims that report "confirm [ed] the presence of a spreading bacterial infection." (Compl. ¶ 73; Affidavit of John Whitfield dated Nov. 5, 2009 Ex. B: Laboratory report dated Sept. 23, 1993 ("Attica Lab Report").) Both lab reports were issued by Bio-Reference. On September 12, 2008, Whitfield again

met with Dr. Lancellotti and requested to see a specialist. (Compl.¶ 60.) Dr. Lancellotti denied Whitfield's request for an ultrasound or an MRI of his kidneys but ordered an x-ray. (Compl.¶ 60.)

Whitfield alleges that Defendants "[a]t all times relevant ... acted pursuant to the policies ... promulgated by [DOCS] ." (Compl.¶ 47.) Based on the laboratory reports in his medical file and Defendants' inactions, Whitfield claims that Defendants "entered into an agreement to ignore [his] urinary tract infection" of twenty years duration "to bring about his death." (Compl.¶¶ 91-94.) Whitfield also claims that in furtherance of the conspiracy, employees at the Greenhaven Correctional Facility ("Greenhaven") removed laboratory reports from his file in October 1991 and January 1993, and that Dr. Heidi L. Fine destroyed an x-ray taken November 6, 2000. (Compl.¶¶ 59, 95, 99.) He further alleges that Defendants' actions prevented him from discovering his true medical condition until July 28, 2008. (Compl.¶ 106.)

On September 13, 2008, Whitfield filed grievance # WB-14349-08 (the "Infection Grievance") at Woodbourne requesting treatment "by an outside physician" and the removal of "the doctors who ignored [his] urinary tract infection." (Compl. ¶ 61; Pl. Aff. Ex. D: Inmate Grievance Complaint dated Sept. 13, 2008.) Dr. Lancellotti responded on September 25, 2008 by stating that "there was nothing currently wrong with [Whitfield's] health." (Compl.¶ 123.) The CORC denied Whitfield's grievance on appeal on November 19, 2008. (Compl. ¶ 54; Pl. Aff. Ex. D: CORC Grievance Decision dated Nov. 19, 2008.)

On November 17, 2008, Dr. Lancellotti performed a laser surgical removal of a wart on Whitfield's tricep. (Compl.¶ 63.) Whitfield alleges that Dr. Lancellotti treated him roughly during the procedure, left a deep gash and portions of the wart behind, and failed to prescribe pain killers. (Compl.¶ 63.) Whitfield filed grievance # WB-14427-08 (the "Retaliation Grievance") on November 26, 2008 alleging Dr. Lancellotti acted in retaliation for the Infection Grievance. (Compl.¶¶ 63, 125.) The CORC denied the Retaliation Grievance on January 28, 2009. (Compl.¶ 54.)

## DISCUSSION

### I. *Legal Standard*

*4 "A court faced with a motion to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998). When considering a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).

Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (requiring plaintiff to plead "enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

A *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.' " *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). "These liberal pleading rules apply with particular stringency to complaints of civil rights violations." *Phillip v. Univ. of Rochester,* 316 F.2d 291, 293-94 (2d Cir.2003). Nevertheless, the court need not accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (citations omitted).

### II. *Eleventh Amendment and Sovereign Immunity*

"Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998); *see also Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "Therefore, state officials

cannot be sued in their official capacities for retrospective relief under section 1983." *Huminski v. Corsones,* 386 F.3d 116, 133 (2d Cir.2004) (citing *Will,* 491 U.S. at 71). Moreover, because Section 1983 does not abrogate a state's sovereign immunity, *Quern v. Jordan,* 440 U.S. 332, 341, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and the State of New York has not waived its immunity, claims against DOCS for both monetary and injunctive relief are barred under the Eleventh Amendment. *Santiago v. N.Y. State Dep't of Corr. Servs.,* 945 F.2d 25, 31-32 (2d Cir.1991). Accordingly, Whitfield's § 1983 claims against the individual State Defendants in their official capacities and against DOCS for monetary and injunctive relief are dismissed.

III. *Statute of Limitations: Defendants Williams & Fischer*

A. *In General*

**\*5** "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)) (alterations in original). In New York, the applicable statute of limitations is three years. N.Y. C.P.L.R. § 214(5); *see also Pearl,* 296 F.3d at 79. "For statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner turn[s] his complaint over to prison officials for transmittal to the court, not when the court actually receives it." *Abbas v. Dixon,* 480 F.3d 636, 638 & n. 1 (2d Cir.2007) (internal quotation marks omitted). Because Whitfield delivered his original complaint to Woodbourne prison authorities on September 23, 2008, his only actionable claims are those that accrued on or after September 23, 2005.

"Federal law determines when a section 1983 cause of action accrues ... [which occurs] ... when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl,* 296 F.3d at 80 (internal quotation and citations omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato,* 549 U.S. 384, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Likewise, "[d]elay in discovering the cause of the injury does not prevent the claim from accruing" because it is ' "discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock.' " *Gonzalez v. Wright,* 665 F.Supp.2d 334, 348-49 (S.D.N.Y.2009) (quoting *Rotella v. Wood,* 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). Moreover, "[t]he existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs." *Pinaud v. Cty. of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995).

Whitfield alleges that Williams deliberately refused to treat his underlying urinary tract infection or prescribe an alternative antibiotic when treating his bacterial pneumonia on November 6, 2000. Whitfield claims Fischer denied his Chest Pain Grievance on November 3, 2004. Even if Whitfield could not have discovered the cause of his alleged injuries or the existence of the alleged conspiracy until July 28, 2008, his claims against Williams and Fischer both accrued well before September 23, 2005.

B. *Tolling: Continuing Violation and Fraudulent Concealment*

"To assert a continuing violation for statute of limitations purposes," the plaintiff must allege (1) "an ongoing policy of deliberate indifference to his or her serious medical needs"; and (2) for each defendant, "some acts in furtherance of the policy within the relevant statute of limitations period." *Shomo v. City of N.Y.,* 579 F.3d 176, 179, 182-84 (2d Cir.2009). To rely on the fraudulent concealment doctrine, a plaintiff must make non-conclusory allegations of "a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered." *Pinaud,* 52 F.3d at 1157; *see also Shomo,* 579 F.3d at 85 (plaintiff must allege "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" (emphasis in original)).

**\*6** Whitfield does not claim that Williams or Fischer participated in his treatment during the three years preceding the filing of this lawsuit. As for fraudulent concealment, the allegations in the Amended Complaint acknowledge the possibility that Whitfield could have discovered his chronic urinary tract infection before July 28, 2008. First, Whitfield complained about his health problems as far back as 2004. (Compl ¶ 54.) Moreover, when he requested access to his medical records, he received them promptly. (*See* Compl ¶¶ 56, 59.) Whitfield does not claim that any Defendant refused him access to his medical file at any time. Accordingly, the claims against Williams and Fischer are time-barred and dismissed.

IV. *Failure to State a Claim* [3]

[3] Although Defendants also move to dismiss on the ground that Whitfield failed to exhaust his

administrative remedies, "the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies" where "a claim ... [*inter alia* ] ... fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(2); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 252 (S.D.N.Y.2003).

A. *Deliberate Indifference to Serious Medical Needs*
To state a claim of inadequate medical treatment in violation of the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment standard includes objective and subjective criteria: (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) "a prison official must have a sufficiently culpable state of mind[:] deliberate indifference to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Under the objective element, an inmate must allege his medical needs were "sufficiently serious," a standard that "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (internal quotations and citations omitted). However, a prisoner is not required to allege that he "experiences pain that is at the limit of human ability to bear, nor [must he allege] that [his] condition will degenerate into a life-threatening one." *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003).

The subjective element requires the prisoner to allege "something more than mere negligence" yet "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835; *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). The defendant prison official must "know [ ] of and disregard [ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837. "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., ... a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003).

1. *Urinary Tract Infection*

**\*7** The gravamen of the Amended Complaint is that numerous named and unnamed medical personnel at six different prison facilities and at Bio-Reference ignored the five laboratory reports indicating the presence of bacteria in his urine and therefore failed to diagnose or treat his alleged urinary tract infection.[4] This Court need not decide whether Whitfield's alleged chronic urinary tract infection constituted a serious medical need because the acts and omissions Whitfield alleges fail to rise to the level of deliberate indifference.

[4] A district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard. *See Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991). In this case, Whitfield has been heard both in his Amended Complaint-which this Court in its discretion permitted him to file *after* the motions under consideration were filed-and in his papers in opposition to those motions.

"[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary." *Perez v. Hawk,* 302 F.Supp.2d 9, 21 (E.D.N.Y.2004). "[D]isagreements over medications, diagnostic techniques ..., forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001); *see also Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Whitfield's claims that Drs. O'Connell, Muthra and Maw-who each ordered a single laboratory report-ignored the presence of bacteria in his urine and failed to treat his alleged urinary tract infection are at most "isolated omission[s] to act" which do "not support a claim under section 1983 absent special circumstances indicating an evil intent, recklessness, or at least deliberate indifference ..." *Avers v. Coughlin,* 780 F.2d

205, 209 (2d Cir.1985) (*per curiam* ). Even if, as Whitfield alleges, basic medical procedure required these Defendants to "take appropriate additional steps" to determine the nature of the bacteria found, this is at most negligence, not deliberate indifference. See *Chance,* 143 F.3d at 703.

Whitfield further alleges that Drs. Fein, Everett, Ginsberg, Fine and Halko, and no fewer than eighteen registered nurses ignored the laboratory reports when treating him between January 1990 and July 2008. Whitfield does not allege at what point in that mostly time-barred eighteen-year period he was examined or treated by any of these Defendants, under what circumstances, or for what medical conditions. Because Whitfield does not "identif[y] the particular events giving rise to [his] claim[s]" against these Defendants, his Amended Complaint fails to give them "fair notice of what the claim is and the grounds upon which it rests." *Boykin v. KeyCorp.,* 521 F.3d 202, 214-15 (2d Cir.2008).

Whitfield's claims against Dr. Lancellotti concerning treatment for his urinary tract infection also fail as "mere disagreement[s] over [ ] proper treatment [which] do [ ] not create a constitutional claim." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998); *see also Joyner v. Greiner,* 195 F.Supp.2d 500, 505 (S.D.N.Y.2002) (physician's refusal to order an MRI not actionable under the Eighth Amendment). "So long as the treatment given is adequate," as Dr. Lancellotti's was here, "the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703.

*\*8* Finally, Whitfield fails to state a claim against the Bio-Reference Defendants. A laboratory's choice not to perform bacteria identification and antibiotic sensitivity tests on blood and urine samples are medical judgments of the kind that cannot give rise to a constitutional claim. See *Estelle,* 429 U.S. at 107.

Accordingly, this Court grants Defendants' motions to dismiss Whitfield's deliberate indifference to serious medical needs claims arising from the treatment of his urinary tract infection.

2. *Wart Removal*
Whitfield alleges that Dr. Lancellotti inadequately performed a laser surgical removal of a wart and refused to prescribe pain killers during post-operative recovery. Warts do not constitute a serious medical need under the Eighth Amendment. See *Page v. Scott,* No. 07 Civ. 287(BES)(VPC), 2009 WL 604922, at \*6 (D.Nev. Feb. 17, 2009) (plantar warts are not a serious medical need). Moreover, the allegedly hostile and incomplete performance of a laser surgical wart removal and refusal to prescribe pain medication thereafter does not constitute deliberate indifference. See *White v. Corrs. Med. Servs.,* No. 06 Civ. 680(SNL), 2006 WL 1391298, at \*2 (E.D.Mo. May 19, 2006) (prisoner's allegations of "failure to remove [his] warts entirely" and resulting pain "may be cognizable as a negligence or medical malpractice claim under state law, [but] they are insufficient to sustain a constitutional violation"). Not surprisingly, this Court could not find any decisions by courts in the Second Circuit concerning deliberate indifference claims as applied to non-venereal warts. Accordingly, this Court dismisses Whitfield's deliberate indifference to serious medical needs claim concerning the wart removal with prejudice pursuant to Rule 12(b) (6).

B. *Conspiracy*
To state a claim for "a § 1983 conspiracy, a plaintiff must [allege]:(1) an agreement between two or more state actors ... (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). [5] Because "Section 1983 is only a grant of a right of action [,] the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 119 (2d Cir.1995). Therefore, a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer,* 63 F.3d at 119 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (one of the necessary elements of a § 1983 action is "that the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States")). Since Whitfield's deliberate indifference to serious medical needs claims fail, his claim of a conspiracy also falls.

[5]  "[A] § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws." *Dixon v. City of Lawton, Okla.,* 898 F.2d 1443, 1447 (10th Cir.1990). However, " § 1985(3) requires proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus; there is no such requirement under § 1983." *Dixon,* 898 F.2d at 1447 (citing *Griffin v. Breckenridge,* 403

U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

C. *Retaliation*

"[T]o survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (internal quotation marks and citation omitted). It is well established that the filing of prison grievances is constitutionally protected conduct. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments"). Nonetheless, "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Davis,* 320 F.3d at 352; *see also Williams v. Fisher,* No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *10 (S.D.N.Y. Sept.18, 2003) ("because of the ease of fabricating a claim of retaliation, the Second Circuit requires the court to handle such claims with care").

**\*9** "[I]n the prison context [the Second Circuit has] defined 'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (emphasis in original and citation omitted). In considering a prisoner retaliation claim, courts must bear in mind that "prisoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis,* 320 F.3d at 353 (internal quotation marks omitted); *Young v. Strack,* No. 05 Civ. 9764(WHP), 2007 WL 1575256, at *7 (S.D.N.Y. May 29, 2007).

Although courts in this district have recognized that a prison physician's retaliatory treatment may well constitute "adverse action," these cases involve the revocation of "necessary medical rehabilitative treatment," *Williams,* 2003 WL 22170610, at *11, or the denial of medical treatment for injuries later requiring surgery, *Burton v. Lynch,* --- F.Supp.2d ----, No. 08 Civ. 8791(LBS), 2009 WL 3286020, at *9, 11 (S.D.N.Y. Oct. 13, 2009). That Dr. Lancellotti may have performed a laser wart removal without the most pleasant of bedside manners, or that he may have left part of the wart behind and declined to prescribe pain killers falls far short of "adverse action" which would chill the speech of a similarly situated individual of ordinary firmness. Dr. Lancellotti's alleged actions are "simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis,* 320 F.3d at 353. Accordingly, this Court dismisses Whitfield's retaliation claim concerning Dr. Lancellotti's laser removal of a wart from Plaintiff's arm.

V. *State Law Claims*

Having dismissed all of Whitfield's federal claims, this Court declines to exercise supplemental jurisdiction over his pendant state law claims. *See* 28 U.S.C. § 1367; *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

*CONCLUSION*

For the foregoing reasons, the State Defendants' and the Bio-Reference Defendants' motions to dismiss the Amended Complaint are granted. The Clerk of the Court shall terminate all pending motions and mark this case as closed.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1010060

Case 9:17-cv-00244-BKS-TWD   Document 76   Filed 07/02/20   Page 15 of 20
Richard v. Leclaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

2017 WL 4349381
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John Willis RICHARD, Plaintiff,
v.
Lucien J. LECLAIRE, et al., Defendants.

9:15-CV-00006 (BKS/TWD)
|
Signed 09/29/2017

**Attorneys and Law Firms**

John Willis Richard, 91-A-0169, Eastern NY Correctional Facility, Box 338, Napanoch, New York 12458, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Ryan W. Hickey, Esq., Assistant Attorney General, The Capitol, Albany, New York 12224, Counsel for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Court Judge

### I. Introduction

*1 Plaintiff pro se John Willis Richard brought this action under 42 U.S.C. §§ 1983, 1985(3), and 1986 against Defendants Lucien J. Leclaire, Deputy Commissioner of the Department of Correctional Services and Community Supervision ("DOCCS") in the State of New York; Captain Timothy McCarthy, Auburn Correctional Facility ("Auburn"); Lieutenant Daniel Oleksiw, Auburn; Lieutenant Michael P. Brown, Auburn; Lieutenant Burns, Auburn; Sergeant Anthony P. Volpe, Auburn; Corrections Officer ("C.O.") Gary C. Gibson, Auburn; C.O. Michael Woodard, Auburn; Lieutenant Wayne Jordan, Sullivan Correctional Facility ("Sullivan"); Lieutenant Garry Sipple, Sullivan; Dennis Giglio, Deputy Superintendent of Security, Sullivan Correctional Facility; C.O. Joseph Daddezio, Sullivan; Sergeant Paul Mace, Sullivan; and C.O. Jeremy McGaw, Upstate Correctional Facility ("Upstate"). (Dkt. Nos. 1, 46, 52, 53).[1]

[1] The summonses were returned unexecuted as to Defendants Burns and Giglio. (Dkt. No. 37). There has been no appearance by these defendants; they are not parties to the motion to dismiss. (Dkt. No. 46).

The Complaint alleges, *inter alia*, that Defendants took action in violation of Plaintiff's constitutionally protected rights in response to his refusal to remove designs shaved into his beard. (Dkt. No. 1). By Decision and Order filed October 22, 2015, the Court granted Plaintiff's in forma pauperis application, dismissed certain claims and defendants, and found that the remaining claims survived a *sua sponte* review and required a response. (Dkt. No. 10). The claims remaining after initial review are: (1) Fourteenth Amendment due process claims against Defendants Brown, Jordan, and Giglio, arising out of disciplinary hearings and appeals; (2) First Amendment retaliation claims against Defendants Gibson, Volpe, Woodard, McCarthy, Burns, and Brown involving the issuance of a false inmate misbehavior report ("IMR") and the rigging of the disciplinary hearing on the IMR; (3) a Fourteenth Amendment due process vagueness claim against Leclaire regarding DOCCS Directive 4914; (4) Fourteenth Amendment equal protection claims against Defendants Gibson, Volpe, Woodard, Burns, McCarthy, Brown, McGaw, Jordan, Daddezio, Sipple, Mace, and Giglio; and (5) various conspiracy claims against Gibson, Volpe, Woodard, Burns, McCarthy, Oleksiw, Brown, Jordan, Sipple, Daddezio, Mace, and Giglio. (Dkt. No. 10 at 39).

On November 15, 2016, eleven of the Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (i) Plaintiff's claims are barred, in part, by the statute of limitations; (ii) Plaintiff fails to state a procedural due process claim because he contested disciplinary hearings and did not identify a protected liberty interest; and (iii) Plaintiff fails to state a conspiracy claim and, in the alternative, that any conspiracy claims are barred by the intracorporate conspiracy doctrine. (Dkt. No. 46-1).

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on July 10, 2017, issued an Order and Report-Recommendation ("R & R") recommending that Defendant's motion to dismiss be granted on the basis that several of Plaintiff's claims are barred by the statute of limitations—specifically, Plaintiff's (1) Fourteenth Amendment procedural due process claims against Brown; (2) First Amendment retaliation claim against Defendants Gibson, Volpe, Woodard, McCarthy, and Brown [2]; (3)

Case 9:17-cv-00244-BKS-TWD Document 76 Filed 07/02/20 Page 16 of 20

Richard v. Leclaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

Fourteenth Amendment equal protection claim against Defendants Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; and (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown. (Dkt. No. 61 at 39).[3] The R & R recommends that Plaintiff's Fourteenth Amendment due process claim against Defendant Jordan be dismissed on the ground that Plaintiff fails to adequately state a claim for violation of his procedural due process rights. (*Id.* at 35). Finally, the R & R recommends that Plaintiff's conspiracy claims be dismissed under the intracorporate conspiracy doctrine, to the extent that the conspiracy claims against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are not also barred by the statute of limitations. (*Id.* at 38).

[2] The R & R inadvertently refers to Defendant Brown as "Brooks" in two instances, but otherwise correctly refers to him as Defendant Brown. (Dkt. No. 61 at 32–33).

[3] As the R & R notes, "summonses were returned unexecuted as to Defendants Burns and Giglio. There has been no appearance on behalf of Burns and Giglio, and they are not parties to the motion to dismiss." (Dkt. No. 10 at 2 n.1 (internal citations omitted)).

 *2 Plaintiff filed an 83-page objection to the Report-Recommendation on September 14, 2017. (Dkt. No. 66). Plaintiff's primary objections are that the R & R: (i) improperly determined that his claims are barred by the statute of limitations, because the fraudulent concealment doctrine renders all of his claims timely (*id.* at 2); (ii) inappropriately applied "employment discrimination Title VII laws of a continuating [sic] violation doctrine to a prison setting" (*id.* at 26); (iii) improperly "denied [him] the benefits of res judicata and collateral estoppel on the merits foundated [sic] in the complaint" (*id.* at 29); (iv) improperly applied the intracorporate conspiracy doctrine in determining that some of his claims are time-barred; and (v) failed to consider his requests for certification of interlocutory appellate review of three issues (*id.* at 26, 77–78, 79). Further, Plaintiff argues that he should be permitted to amend his complaint to state a new claim for First Amendment retaliation due to the fact that Magistrate Judge Dancks took judicial notice of the 2013 revision to Directive 4914. (*Id.* at 58–72).

For the reasons set forth below, the R & R is adopted in its entirety.

## II. Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F.Supp.3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III. Discussion

### A. Fraudulent Concealment Doctrine

Plaintiff objects to the R & R on the basis that the Magistrate Judge failed to consider Plaintiff's argument that the doctrine of fraudulent concealment "makes all claims in suit timely." (Dkt. No. 66 at 2).

"[T]he doctrine of fraudulent concealment prevents a party from fraudulently concealing wrongdoing until after the tolling of the statute of limitations." *Aiken v. Nixon*, 236 F.Supp.2d 211, 240 (N.D.N.Y. 2002). "To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by defendants [of their actions] (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F.Supp.2d 268, 278 (S.D.N.Y.2013). "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).

The claims for which the R & R recommends dismissal on the basis of the statute of limitations are all grounded in the issuance of Inmate Misbehavior Reports ("IMRs"), and the subsequent adjudication and administrative approval of disciplinary actions. (*See* Dkt. No. 1, ¶¶ 87, 89, 93, 101, 192–198, 221–24, 226–228, 288; Dkt. No. 1-2 at 7, 15, 19–27, 33, 35, 41–45, 47, 62, 72–76, 109, 111, 114–44). Plaintiff does not allege that Defendants undertook any disciplinary actions, which constitute the basis of the alleged harms against him, in secret or without his knowledge. Nor does he allege that Defendants successfully conspired to mislead Plaintiff into

Case 9:17-cv-00244-BKS-TWD   Document 76   Filed 07/02/20   Page 17 of 20
Richard v. LeClaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

believing that he did not have a cause of action, or that he was otherwise not on notice of a potential claim after an IMR was issued or the disciplinary hearing occurred. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("To take advantage of [the] doctrine [of fraudulent concealment], however, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered.*"); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (fraudulent concealment tolls the statute of limitations only where plaintiff "remained in ignorance of [his] cause of action"). Indeed, Plaintiff acknowledges that he was contemporaneously aware of each IMR, disciplinary hearing, or administrative approval that allegedly constituted a violation of his rights. (*See* Dkt. No. 1 at ¶¶ 87, 89, 93, 101, 192–98, 221–24, 226–28, 288). The doctrine of fraudulent concealment is therefore inapplicable.

**\*3** After reviewing this issue *de novo*, the Court agrees with Magistrate Judge Dancks' determination that Plaintiff's (1) Fourteenth Amendment procedural due process claims against Brown; (2) First Amendment retaliation claim against Defendants Gibson, Volpe, Woodard, McCarthy, and Brown; (3) Fourteenth Amendment equal protection claim against Defendants Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; and (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are barred by the statute of limitations.

### B. Continuing Violation Doctrine

Plaintiff objects to the R & R on the basis that it improperly applies "employment discrimination Title VII laws of a continuating [sic] violation doctrine to a prison setting" in determining that Plaintiff's Fourteenth Amendment equal protection claims are barred by the statute of limitations. (Dkt. No. 66 at 26–28).

"Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001)). "[T]he continuing-violation doctrine has been applied, both by the Second Circuit and by courts in other jurisdictions, to a variety of non-Title VII claims," including Eighth Amendment deliberate indifference and racial discrimination claims and claims brought under § 1983 in a prison context. *Remigio v. Kelly*, No. 04-cv-1877, 2005 WL 1950138, at \*7, 2005 U.S. Dist. LEXIS 16789, at \*22 (S.D.N.Y. Aug. 2, 2005); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (Eighth Amendment deliberate indifference claim); *Washington*, 373 F.3d at 317 (racial discrimination claim under § 1983). The Second Circuit has generally reasoned by analogy to Title VII cases when applying the continuing violation doctrine to circumstances other than employment discrimination cases. *See Washington,* 373 F.3d at 317 (conducting continuing violation analysis of § 1983 claim, but finding that doctrine did not toll the statute of limitations because claims accrued when defendant undertook discrete act of initiating disciplinary proceeding). Regardless of the context, however, "federal courts look unfavorably on continuing violation arguments, and have applied the theory only under 'compelling circumstances,' such as where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred." *Yip v. Bd. of Trs.*, No. 03-CV-00959C (SR), 2004 WL 2202594, at \*4, 2004 U.S. Dist. LEXIS 28366, at \*14 (W.D.N.Y. Sep. 29, 2004).

Here, Plaintiff has alleged discriminatory actions by Defendants Gibson, Volpe, Woodard, McCarthy, and Brown specifically in connection with the January 28, 2011 IMR and subsequent disciplinary proceedings. (Dkt. No. 1-2 at 41). Similarly, Plaintiff alleges that Defendant McGaw discriminatorily filed an IMR against him at Upstate for refusing McGaw's direct order to remove the design shaved into Plaintiff's beard. (*Id.* at 111–12). Both allegations describe conduct that is "discrete in its nature" and "wholly separable" from other allegations of discrimination. *Washington,* 373 F.3d at 319. In other words, Plaintiff's allegations do not describe "a continuous or ongoing policy or practice" of discrimination necessary to demonstrate the kind of compelling circumstances that justify tolling of the statute of limitations by the continuing violation doctrine. *Id.* "That the continuing violation doctrine can apply ... does not mean it must." *Shomo,* 579 F.3d at 182.

**\*4** After reviewing this issue *de novo*, the Court concludes that Magistrate Judge Dancks properly considered the continuing violation doctrine and agrees with Magistrate Judge Dancks' determination that it does not render Plaintiff's claims timely and that Plaintiff's Fourteenth Amendment equal protection claims against Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw should be dismissed.

### C. Collateral Estoppel

Case 9:17-cv-00244-BKS-TWD   Document 76   Filed 07/02/20   Page 18 of 20

Richard v. Leclaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

Plaintiff seems to object to the R & R on the basis that it fails to consider that, because prior prison disciplinary proceedings determined that his beard was in compliance with Directive 4914, Defendants should be estopped from "making any motion in its defense or affirmative defense like the motion to dismiss 12(b)(6) as to the present motion on any litigation grounds for that matter." (Dkt. No. 66 at 34). Plaintiff's objections are meritless.

In order for a plaintiff to "bar a defendant from litigating an issue on collateral estoppel grounds: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 37 (2d Cir. 2005). Assuming, *arguendo*, that the doctrine of collateral estoppel may apply to prison disciplinary proceedings,[4] none of the issues raised by Plaintiff's claims for First Amendment retaliation, Fourteenth Amendment due process violations, Fourteenth Amendment equal protection violations, and conspiracy to deprive Plaintiff of his constitutionally protected rights were addressed or determined in his prison disciplinary proceeding. The doctrine of collateral estoppel is therefore inapplicable.

[4] See *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (noting that "there is a substantial question as to whether, under New York Law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the 'procedural laxity' of such prison hearings and the limited nature of substantial-evidence review").

### D. Intracorporate Conspiracy Doctrine

Plaintiff objects to the R & R's application of the "intracorporate conspiracy doctrine in a prison context" as it is "strictly a business ... doctrine." (Dkt. No. 66 at 80). Plaintiff argues that the R & R "uses the intracorporate conspiracy doctrine to evade Plaintiff's claims against Defendants to favor them in the face of prior Northern District rejections of the doctrine in a prison setting." (*Id.*). The cases Plaintiff offers in support, however, acknowledge the appropriateness of applying the doctrine in a prison setting. *See, e.g., Benitez v. Hamm*, No. 9:04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *18–19, 2009 U.S. Dist. LEXIS 97495, at *68–71 (N.D.N.Y. Sept. 30, 2009) (Lowe, Mag. J.) ("I will assume that the [intracorporate conspiracy] doctrine applies in § 1983 cases."); *Orafan v. Goord*, 411 F.Supp.2d 153, 164-65 (N.D.N.Y. 2006) (Magnuson, J.) ("The intracorporate conspiracy doctrine applies to individual defendants of a correctional institution."), *vacated and remanded on other grounds sub nom. Orafan v. Rashid*, 249 Fed.Appx. 217 (2d Cir. 2007); *Medina v. Hunt*, No. 9:05-CV-1460 (DNH/GHL), 2008 WL 4426748, at *8, 2008 U.S. Dist. LEXIS 120759, at *54 (N.D.N.Y. Sep. 2, 2008) (Lowe, Mag. J.) (applying intracorporate conspiracy doctrine analysis to prison context). Further, in each of these cases, the defendants were alleged to have been "pursuing personal interests wholly separate and apart from the entity." *Orafan*, 411 F.Supp.2d at 165 (citation and internal quotation marks omitted). In such situations, the intracorporate conspiracy doctrine does not bar conspiracy claims, and defendants may be found liable for their conduct. *Id.*

**\*5** Plaintiff has failed to allege any nonconclusory facts that raise a plausible claim that Defendants at either Auburn or Sullivan were pursuing interests that were wholly separate from DOCCS and their employment by DOCCS. Having reviewed this issue *de novo*, the Court agrees with Magistrate Judge Dancks' recommendation that Plaintiff's conspiracy claims should be dismissed under the intracorporate conspiracy doctrine, to the extent that the claims against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are not already time-barred by the statute of limitations as discussed in Section III.A, *supra*. *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming dismissal of § 1985 claim against police officers, police department, and the village under intracorporate conspiracy doctrine).

### E. Request for Certification of Interlocutory Appeal

Plaintiff objects to the R & R on the basis that it fails to consider his request to certify an order to the Second Circuit Court of Appeals so that he may obtain a decision relating to application of the continuing violation and intracorporate conspiracy doctrines to his case. (Dkt. No. 66 at 26, 79).

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where "such order involves a controlling question of law as to where there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Case 9:17-cv-00244-BKS-TWD   Document 76   Filed 07/02/20   Page 19 of 20

Richard v. Leclaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

"[L]eave to appeal from interlocutory orders should be granted only in exceptional circumstances [that] ... overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of final judgment." *Picard v. Estate of Madoff*, 464 B.R. 578, 582–83 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). "Interlocutory appeals are strongly disfavored in federal practice. Movants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases. Only exceptional circumstances will justify a departure from the basic policy of avoiding appellate review until a final decision on the merits." *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *2, 2013 U.S. Dist. LEXIS 139594, at *3 (S.D.N.Y. Sept. 17, 2013) (quoting *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F.Supp.2d 241, 282 (S.D.N.Y. 2010)).

Plaintiff fails to demonstrate any "controlling question of law as to where there is substantial ground for difference of opinion." There are no "exceptional circumstances" that warrant certification of an order for interlocutory appeal, and Plaintiff's request is accordingly denied.

### F. New Claim for First Amendment Retaliation

Plaintiff asserts that, because Magistrate Judge Dancks's took judicial notice in the R & R that Directive 4914 was amended to prohibit beard "[p]atterns, designs, or braids" on March 1, 2013 (Dkt. No. 61 at 4 n.4), he is entitled to assert a new claim that Defendants retaliated against him by "informing 'DOCS/Albany' about the beard designs" in violation of his First Amendment rights. (Dkt. No. 66 at 58). This is not an objection to the R & R. In any event, Plaintiff's arguments are meritless.

To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "In order to establish a causal connection at the pleading stage, the 'allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.' " *Morey v. Somers Cent. Sch. Dist.*, 2007 WL 867203, at *11, 2007 U.S. Dist. LEXIS 20265, at *36 (S.D.N.Y. Mar. 21, 2007) (quoting *David v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). In determining whether circumstantial facts indicate that a "causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F.Supp.2d 723, 732–33 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*6** Plaintiff alleges that Defendants at Sullivan, motivated by Plaintiff's grievances related to his refusal to shave designs out of his beard, "retaliated by informing 'DOCS/Albany' about the beard designs" and that their action resulted in the March 1, 2013 amendment to Directive 4914. (Dkt. No. 66 at 63). Grievances are protected conduct under the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding that the plaintiff "has sufficiently alleged ... participation in protected activity: the use of the prison grievance system"). Plaintiff alleges that he suffered an adverse action when DOCCS amended Directive 4914 in March 2013. (Dkt. No. 66 at 64). Plaintiff asserts that there is a causal connection between his grievances and the amendment of Directive 4914, arguing: "How else would the dir. 4914 change/be 'amended' to include bar to beard designs if [Defendants] did not report it to Albany/DOCS?" (*Id.* at 64). Even assuming that this Directive could constitute an adverse action, the amendment of a DOCCS directive more than a year after the last protected conduct fails to allege a causal connection between the protected conduct and the Directive. Indeed, there are no allegations that allow a plausible inference that any particular Defendant actually urged the amendment of Directive 4914 following Plaintiff's grievances.

### IV. Conclusion

Accordingly, it is hereby

**ORDERED** that the Report and Recommendation (Dkt. No. 61) is **ADOPTED** in its entirety for the reasons stated therein; and it is further

Case 9:17-cv-00244-BKS-TWD   Document 76   Filed 07/02/20   Page 20 of 20

Richard v. Leclaire, Not Reported in Fed. Supp. (2017)
2017 WL 4349381

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 46) pursuant to Rule 12(b)(6) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the motion to dismiss is granted as to and that the following claims are **DISMISSED WITH PREJUDICE**: (1) Fourteenth Amendment procedural due process claims against Defendants Brown and Jordan; (2) First Amendment retaliation claim against Defendants Gibson, Volpe, Woodard, McCarthy, and Brown; (3) Fourteenth Amendment equal protection claim against Defendants Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown under §§ 1983, 1985(3), and 1986; and (5) conspiracy claim against Defendants Jordan, Mace, Daddezio, and Sipple brought under §§ 1983, 1985(3), and 1986; and it is further

**ORDERED** that the motion to dismiss is **DENIED** as to the Fourteenth Amendment due process vagueness claim against Defendant Leclaire;[5] and it is hereby

Plaintiff's equal protection claim against Defendants Jordan, Sipple, Daddezio, Mace, and Giglio remains.

**ORDERED** that Defendants Brown, Gibson, Volpe, Woodard, McCarthy, McGaw, Oleksiw be **DISMISSED** from this action; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on the plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4349381

---

End of Document    © 2020 Thomson Reuters. No claim to original U.S. Government Works.